IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| DONALD W. BRYAN | ) | CASE NO. 05-40588-H3-7 |
| a/k/a DON W. BRYAN, | ) | |
| | ) | |
|     Debtor | ) | |
| | ) | |
| | ) | |
| BANC OF AMERICA STRATEGIC | ) | ADVERSARY NO. 05-3919 |
| SOLUTIONS, INC., | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
|   v. | ) | |
| | ) | |
| | ) | |
| DONALD W. BRYAN | ) | |
| | ) | |
|     Defendant | ) | |
| | ) | |

MEMORANDUM OPINION

The court heard Banc of America Strategic Solutions, Inc.'s Complaint To Determine Dischargeability of Debt (Docket No. 1) against the Debtor, Donald W. Bryan.  The court, after considering the pleadings, evidence, testimony and argument of counsel, makes the following findings of fact and conclusions of law and renders a Judgment for Debtor, declaring that $50,000 of the debt in the amount of $408,845.56 owed by Debtor to Banc of America Strategic Solutions, Inc. ("BOA") is non-dischargeable. The remainder of the debt is dischargeable.  To the extent that any findings of fact are deemed to be conclusions of law, they are hereby adopted as such.  To the extent that any conclusions of law are deemed to be findings of fact they are hereby adopted as such.

Findings of Fact

1. Donald W. Bryan a/k/a Don W. Bryan ("Debtor") filed a Chapter 7 proceeding on July 7, 2005. Petition, Main Case Number 05-40588-H3-7.

2. BOA filed a proof of claim in Debtor's case in the amount of $409,845.56, and seeks to have this court render a judgment in its favor with interest, costs and attorney's fees and declare the debt due BOA non-dischargeable under 11 U.S.C. § 523.

3. BOA alleges that the debt is non-dischargeable pursuant to § 523(a)(2)(A) based on false representations of the debtor and § 523(a)(6) based on willful and malicious injury by the debtor to another entity or to the property of another entity. Complaint, Docket No. 1.

4. The parties filed a Stipulation of Facts. Docket No. 22. Debtor is 71 years old and an engineer by education, training and employment. He is also the sole shareholder, officer and director of Oilfield Power & Supply Co. ("OPS"), a Texas corporation formed in 1979. OPS provides engineering services, and designs and fabricates oilfield equipment. OPS was a dealer and designer for pumps and other oilfield equipment as well as a purchaser of components which were assembled and sold.

5. Debtor held the position of President, Vice President, Treasurer and Secretary with OPS. Prior to April 2001, OPS had a revolving line of credit from BOA. OPS requested an increase in the line of credit for a special project and working capital. In April 2001, as President, and on behalf of OPS, he

executed a promissory note payable to BOA in the original principal amount of $400,000. In conjunction with the note, OPS executed a security agreement granting BOA a security interest in accounts receivable and equipment. Debtor guaranteed the debt and subordinated all of the obligations of OPS due to Debtor to the BOA loan.

      6. The loan was on a revolving basis since OPS required funding for large engineering jobs upon which it was bidding. Debtor testified that the loan provided the working capital to assist OPS in obtaining parts to build and finish projects. Debtor testified that during the last five years, OPS worked in conjunction with other entities on projects, and also made loans to a number of people and entities with whom he did business. Debtor testified that making loans and investing in certain companies or projects was consistent with OPS' past business practices. It is therefore Debtor's position that OPS' use of the monies from the BOA loan was in accordance with the purpose of the loan which was to provide working capital to OPS.

      7. BOA contends that the revolving loan was to fund the acquisition of equipment so OPS could finish a single project, which was never completed. BOA's "Disbursement Request and Authorization" dated April 17, 2001, reflects the primary purpose of the loan is for business and the specific purpose is "Working Capital." BOA Exhibit No. 7. OPS was initially approved for a $200,000 revolving loan which was increased to $400,000 upon reconsideration. The reasons stated for the increase by BOA's

Business Loan Center on the "Business Loan Center Appeal Form" reflects that the increase was needed for "interim financing for 7 month project then will lower line amount." BOA Exhibit No. 5. Debtor did not take a lump sum advance on the total amount but took periodic draws from the letter of credit and made monthly payments on the BOA loan from the date of the loan, April 2001, until the first part of 2005. The court finds that the BOA revolving line of credit was not limited to a single project.

8. Debtor testified that some of the money advanced on the BOA account was loaned to Davcrane, a company owned by Debtor's friend. Debtor has provided consulting services for Davcrane in the past and continues to do so periodically. Debtor testified that Davcrane requested the loan from OPS in order to purchase equipment. Debtor testified that he and OPS have done business with Davcrane in the past and previously loaned it money. He testified that a prior loan of over $400,000 was made to Davcrane around 2001 and was repaid to OPS in full. Debtor testified that he had no reason to believe that repayment on this loan would be any different and he considered it to be a secure investment.

9. Davcrane owes OPS $201,600 plus interest on the loan which is unsecured. Currently, Davcrane has a pending Chapter 11 bankruptcy case in the Southern District of Texas, Brownsville Division. Case No. 04-11507-B-11. Debtor testified that the owner of Davcrane also has a pending bankruptcy proceeding. The court notes that Davcrane's bankruptcy is a reorganization proceeding but no information was provided as to whether payments are anticipated

to be made by Davcrane on its debt to OPS.

10. Plaintiff alleges that Debtor also used money from the BOA loan to invest in Castle Technologies, LLC ("Castle"). Debtor testified that Castle was formed in April 2002 and was involved in the design and attempted construction of a machine to measure tread wear on automobile tires. Debtor testified that his Roth IRA had a 50% interest in the company pursuant to a $3,000.00 contribution. He testified that he did not directly invest in Castle because it was his understanding that federal regulations prevented the owner of a Roth IRA to directly invest in an entity owned by the Roth IRA. Debtor also testified that he believed that a loan from OPS or a corporation owned by Debtor to the Roth IRA or Castle was an acceptable method of funding according to the IRS.

11. Debtor disputed Plaintiff's contention that advances of money from the BOA loan were used in connection with transactions with Castle. Castle executed a $200,000 promissory note dated April 28, 2003 in favor of OPS. BOA Exhibit No. 1. Debtor testified that he personally loaned money to OPS which funds were then loaned to Castle. He obtained these funds by borrowing against his homestead, pension fund, and credit cards. Debtor exhausted virtually all of the money in his pension plan and lost his home. Testimony of Debtor; Docket No. 1, Petition and Schedules, and Docket No. 10, Order Lifting Stay, Main Case No. 05-40588-H3-7. Castle's endeavors were unsuccessful and it never developed a product which could generate income. Castle made periodic interest payments on the loan from OPS but has made no

principal payments.

12. Although certain terms of the security agreement with BOA may have been violated by OPS through Debtor's actions, the court finds Debtor believed that his actions were in furtherance of the business conducted by OPS, that he made legitimate business decisions and was motivated by his desire for OPS' financial success. The court finds that BOA has failed to establish by a preponderance of the evidence the elements necessary to have the subject debt declared non-dischargeable pursuant to section 523(a)(2)(A). The court finds that the evidence does not establish that Debtor knowingly made false representations to BOA to obtain money from the revolving loan with the intent of deceiving BOA.

13. In connection with OPS' loan to Davcrane and OPS' transactions with Castle, even assuming Debtor used funds obtained through BOA's revolving loan, the court finds that Debtor's actions reflect poor business judgment and may even amount to financial recklessness. However, conduct which is in reckless disregard of another does not amount to "wilful and malicious" conduct which would deny dischargeability of a debt under section 523(a)(6). *See In re Dean*, 79 B. R. 659 (Bankr. N.D. Tex. 1987); *In re Smith*, 113 B.R. 297 (Bankr. N. D. Tex. 1990).

14. The court finds that Debtor's actions in connection with Davcrane and Castle were not deliberately intended to harm or cause harm to BOA or BOA's property. The court concludes that BOA has not met its burden of proof, pursuant to section 523(a)(6), to

establish that the portion of the debt attributable to the transactions of OPS with Davcrane and Castle are non-dischargeable.

15. BOA contends that Debtor caused OPS to use $50,000 in advances from the BOA loan to make a contribution to Debtor's pension fund which was managed by L. T. Shure, Inc. Debtor testified that this company was initially formed in 1986 to handle investments but it ultimately managed payroll related to Debtor's consulting activities and Debtor's pension fund. Debtor owned 100% of the corporation, which was dissolved effective April 25, 2005, approximately three months prepetition. The corporation was dissolved as a result of its insolvency and the fact that it had no properties or remaining assets. BOA Exhibit No. 21.

16. Debtor testified that L. T. Shure had a defined pension plan for him and $50,000 was required to fund the plan by the end of December 2002. At the time, OPS owed L. T. Shure $60,000. Debtor testified that L. T. Shure did not have enough revenue to fund the plan so Debtor borrowed $50,000 under the BOA revolving loan and OPS paid that amount to L. T. Shure on its obligation. L. T. Shure was then able to make the pension plan payment. Debtor testified that all of the money contained in his pension plan was exhausted by his borrowing from it in order to maintain his business.

17. The court finds that even if Debtor did not have specific intent to injure BOA when he caused OPS to make advances from the revolving loan to fund his pension, specific intent is not required. The court looks to whether a debtor knew, or should

reasonably have known, that his unjustifiable act would harm plaintiff or plaintiff's property. *See Seven Elves, Inc. v. Eskenazi,* 704 F. 2d 241 (5th Cir. 1983). The court finds that Debtor knew, or should reasonably have known, that using monies from the BOA loan (which was designed to provide working capital for OPS) to make contributions to his personal pension fund would result in harm to BOA or its property. The court finds that the amount of $50,000, obtained from the BOA loan and used by Debtor to contribute to his pension fund is nondischargeable.

      18. BOA alleges that two post petition payments, totaling $7,000, by OPS to Debtor are non-dischargeable. BOA contends that the money represents payments made on a prepetition loan by Debtor to OPS and that Debtor's guarantee subordinated to BOA all payments on OPS' obligations to Debtor. There is no dispute that the guarantee contains a subordination clause nor that the payments were made. Debtor testified that initially he characterized these payments as loans for tax purposes, but that they actually represented fees for consulting services. Debtor testified that OPS is still in existence and continues to do business. These services were performed in conjunction with a project Debtor worked on with OPS and KOLDA, an entity with which Debtor and OPS have previously worked. The court finds Debtor credible and that these payments were fees for consulting services rendered and are dischargeable.

Conclusions of Law

1. Section 523 is governed by a preponderance of the evidence burden of proof which the creditor is required to show that his debt falls within one of these exceptions. *Grogan v. Garner*, 498 U.S. 279 (1991).

2. Elements of fraud under 523(a)(2)(A) are stated as: that the debtor made the representation; that at the time he knew that they were false; that he made them with the intention and purpose of deceiving the creditor; that the creditor relied on such representation; and that the creditor sustained the alleged loss and damage as the proximate result of the representation made. *See In re Houtman*, 568 F.2d 651 (9th Cir. 1978); *In re Miller*, 5 B.R. 424 (Bankr. W.D.La. 1980); *In re Pommerer*, 10 B.R. 935 (Bankr. D.C. Minn. 1981); *In re Smith*, 113 B.R. 297 (N.D.Tex. 1990); *Matter of Church*, 69 B.R. 425 (N.D.Tex. 1987).

3. False representation need not be made in writing. Actual fraud suffices and includes any deceit, artifice, trick or design involving direct and active operation of the mind used to circumvent and cheat another. Something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. *See* 4 Collier on Bankruptcy ¶ 523.08 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

4. Section 523(a)(6) of the Bankruptcy Code provides that a debtor is not discharged from any debt resulting from a debtor's willful and malicious injury to another entity or to the property of another entity. "Willful" as used in 523(a)(6) means

deliberate or intentional; "malicious" means in conscious disregard of one's duties, or without just cause or excuse, and does not require ill will or specific intent to do harm.  The existence of "reckless disregard" is not proper grounds to hold conduct "willful and malicious."  *See In re Dean*, 79 B. R. 659 (Bankr. N.D. Tex. 1987); *In re Smith*, 113 B.R. 297 (Bankr. N. D. Tex. 1990).

5.  Although specific intent to injure is not required, the court looks to whether an intentional act necessarily causes harm and is without just cause or excuse -- whether debtor knew, or should reasonably have known, that his unjustifiable act would harm plaintiff or plaintiff's property.  *See Seven Elves, Inc. v. Eskenazi,* 704 F. 2d 241 (5th Cir. 1983).

Based upon these findings of fact and conclusions of law, this court renders a Judgment declaring the debt owed by Debtor to BOA to be dischargeable in part and non-dischargeable in part.  The court will enter a separate Judgment in conjunction with these findings of fact and conclusions of law.

Signed at Houston, Texas on this 20th day of March, 2007.

/s/ Letitia Z. Clark
_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE